IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ANGELICA WATSON, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF WARNER ROBINS, GEORGIA,, <br><br> Defendant. | Civil Action <br> File No. 5:22-cv- |

## COMPLAINT

Plaintiff, Angelica Watson ("Plaintiff" or "Watson"), by and through her counsel of record, Robert N. Marx of Marx & Marx, L.L.C., as and for her Complaint, respectfully alleges as follows:

<u>PARTIES</u>

1.

Plaintiff, Angelica Watson is a female natural person residing in the Middle District of Georgia.

2.

On information and belief, Defendant City of Warner Robins, Georgia ("Warner Robins" or "Defendant") is a municipal corporation within the meaning of O.C.G.A. §36-30-1, created by and under the laws of the State of Georgia and is located at 700 Watson Boulevard, Warner Robins, GA 31099. On information and belief, the summons may be served on LaRhonda Patrick, Mayor of the City of Warner Robins, or upon David Corbin (or his replacement) City Manager for the Defendant, at 700 Watson Boulevard, Warner Robins, GA 31099.

3.

Warner Robins has different departments in furtherance of its municipal role and obligations including the Building and Transportation Department in which Plaintiff worked.

JURISDICTION

4.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343 in that this is an action to recover damages for violation of an Act of Congress providing for equal rights of citizens.  The jurisdiction of this Court is also invoked pursuant to 42 U.S.C. §§2000e *et seq.* ("Title VII").

<u>VENUE</u>

5.

Venue is appropriate pursuant to 28 U.S.C. §1391 in that the Middle District

of Georgia is the judicial district in which a substantial part of the events giving

rise to this claim occurred.

<u>NATURE OF THIS ACTION</u>

6.

This is a complaint of unlawful sex discrimination (sexual harassment),

retaliation and constructive discharge under Title VII. The complaint seeks

declaratory and permanent injunctive relief and damages for redress of rights

secured to Plaintiff by this statute.  Plaintiff also seeks an award of attorneys' fees

and costs, pursuant to 42 U.S.C. §1988.

<u>CONDITIONS PRECEDENT</u>

7.

All conditions precedent to invoke the jurisdiction of this Court under Title

VII have been met.  A Right To Sue letter was issued by the Equal Employment

Opportunity Commission on February 22, 2022 by email. Plaintiff's

counsel received the Right To Sue letter on that same date. Plaintiff's counsel sent

a letter to Darryll Graham, Director of the Atlanta District Office on February 23,

2022 seeking recission of the Right to Sue letter based upon an inadequate

investigation, including noting that the EEOC Investigator had requested further information which Plaintiff timely provided, but the EEOC investigator, had issued her Right to Sue Letter  even before reviewing the requested information. Plaintiff's counsel's February 23, 2022 letter to Mr. Graham provided names and contacts details of witnesses and further details including the continuing discrimination up to and including in April 2021 and constructive discharge in that Defendant has kept Plaintiff on indefinite unpaid leave instead of taking the necessary steps to keep her safe from Mr. Davenport and preventing his further harassing her. William Batts at the EEOC communicated to Plaintiff's counsel that the EEOC had received Plaintiff's aforesaid February 23, 2022 communication, reviewed it, attempted but was unsuccessful in reaching some witnesses, and decided not to further investigate Ms. Watson's Charge. Accordingly, all the information contained in Plaintiff's counsel's letter to Darryll Graham dated February 23, 2022 was known by the EEOC and within the scope of its "investigation" which it simply decided not to pursue further, leaving in place the February 22, 2022 Notice of Right to Sue. This Complaint is timely filed within the 90 right to sue period dated from February 22, 2022.

FACTS

8.

Ms. Watson is a Caucasian female residing in Warner Robins.

4

9.

Ms. Watson started working for the Defendant in or about the end of December 2019 as Administrator in the Building and Transportation Department.

10.

At all relevant times Terry Wood held the title City Marshall and was Ms. Watson's immediate supervisor.

11.

Terry Wood is male.

12.

At all relevant times Bill Mulkey was the Director of the Building and Transportation Department of Defendant, to whom Terry Wood directly reported.

13.

Bill Mulkey is male.

14.

At all relevant times Toni Graham was the Director of Human Resources for Defendant.

15.

Toni Graham is female.

16.

On information and belief one Joel Davenport is the son in law of Ms. Graham.

17.

At all relevant times Joel Davenport, who is male, was a technician in the Building and Transportation Department of Defendant.

18.

On information and belief, prior to working at Defendant, Mr. Davenport had been disciplined and/or terminated from prior employers for engaging in sexual harassment.

19.

Mr. Davenport's sexual harassment of women while working at Defendant was open and well known to the City of Warner Robins. Accordingly, Mr. Davenport (as well as a coworker of his) was well known to regularly comment about women's bodies, in particular their "tits" and "ass", and what they would do to women sexually. On information and belief, other women complained about Mr. Davenport's sexual harassment and/or quit because of Mr. Davenport's aforesaid actions.

20.

In or about March 2020, when Defendant shut down due to Covid, Ms. Watson was the sole employee physically running the building in which Defendant's Building and Transportation Department was located. Mr. Davenport was one of the few male employees who had been asked to come into the building to help Ms. Watson when they otherwise had nothing to do, since she was the sole employee running the building.

21.

From in or about April 2020 Joel Davenport began to sexually harass Ms. Watson. His sexual harassment escalated over a series of months starting in April 2020 until he physically assaulted her in or about June 2020. Mr. Davenport's escalating sexual harassment took the form of *inter alia*, repeated comments about his personal sex life with his wife, telling her that he and his wife had an open marriage, telling her that she (Ms. Watson) was hot and saying they should have sex, telling her that he would fix her lawnmower in exchange for sex, telling her that having sex with him would relieve her stress, and repeated requests for sex from Ms. Watson, until he physically grabbed her to drag her into the bathroom to have sex with him.

22.

On or about June 11, 2020, Mr. Davenport came behind Ms. Watson's desk, grabbed Ms. Watson by the wrist, and physically dragged her towards the door of her office telling her that he wanted to have sex with her in the bathroom, that nobody would miss her or notice that she was gone. Ms. Watson was terrified, fought him, and was able to get out of his grasp.

23.

Mr. Davenport's sexual comments to, sexual advances and physical sexual assault of her were unwelcome.

24.

Following the incident when Mr. Davenport tried to drag Ms. Watson into the bathroom to have sex with him, Ms. Watson reported Mr. Davenport's sexual harassment first to her immediate boss Terry Wood, City Marshall, and then to Bill Mulkey, Director of the Building and Transportation Department of the City of Warner Robins. Neither Mr. Wood  nor Mr. Mulkey were interested in obtaining the specifics of Mr. Davenport's conduct. On information and belief, Mr. Wood later admitted shutting Ms. Watson down when she tried to talk to him. On information and belief, both Mr. Wood and Mr. Mulkey were aware that Mr. Davenport was the son-in-law of Defendant's Director of Human Resources, and on information and belief admitted being concerned about this fact. Ms. Watson

unambiguously communicated that she was fearful of Mr. Davenport and that she wanted his behavior towards her to stop and not to be anywhere in his vicinity.

25.

Shortly after reporting Mr. Davenport's sexual harassment to Mr. Wood, Mr. Wood threatened Ms. Watson by "reminding" her that she was still on probation. Ms. Watson responded that she needed her job, but that she did not want Mr. Davenport to come near her.

26.

Mr. Davenport continued to come into Ms. Watson's work area when he had no legitimate reason to be there, intimidating her, leering and her, and causing her to fear that he would again try to physically assault her.

27.

On information and belief there are security cameras in Ms. Watson's work area but they were not working during the relevant times in this case.

28.

Several days after complaining to Mr. Wood and Mr. Mulkey, Ms. Watson was called into the office where Mr. Wood and Mr. Mulkey were waiting for her, and she was told by them that they wanted to keep things in-house. They represented that they had told Mr. Davenport to stay away from Ms. Watson, but they acknowledged that this ostensible direction to Mr. Davenport was ineffective,

since Mr. Davenport repeatedly continued to come into Ms. Watson's work area even though he had no legitimate reason to be there and even though he ostensibly had been told to stay away from Ms. Watson.

29.

During this aforesaid conversation when Ms. Watson told her immediate boss, Mr. Wood,  that Mr. Davenport continued to come into her office, and that she did not feel safe, Mr. Wood told Ms. Watson, "I guess he just doesn't want to follow directions, does he", and laughed.

30.

After reporting Mr. Davenport's sexual harassment, Ms. Watson was subjected to numerous and varied instances of retaliation. This included having her computer tampered with, her coworkers were told to monitor her and to write down everything she did in order to "paper" the file to terminate her, she was warned that she was still on probation, and she was prohibited from filing a police report or obtaining a restraining order following the June 2020 assault, battery and attempted rape.

31.

On information and belief, as noted above, Mr. Davenport's mother-in-law, Toni Graham, is the Director of Human Resources for the City of Warner Robins. After being told by a police officer from the City of Warner Robins that she should

file a police report regarding the June 11, 2020 assault, battery, and attempted rape of her by Mr. Davenport, she was prevented from doing so, allegedly on the direction of the Mayor of the City of Warner Robins. Specifically, a different police officer told her that since the City of Warner Robins was investigating the matter internally, he was prohibited from making a police report. Ms. Watson also attempted to get a judicial restraining order, but was prevented from obtaining one, because the City of Warner Robins would not take her police report.

32.

From 2020 through 2021, Plaintiff was the sole employee working in her office area, due to Covid. As noted above, security cameras which should have been operational and would have covered some areas in Plaintiff's work area, were not operational during the relevant time period, despite police advisement to Defendant that they should be fixed and operational.

33.

In addition to complaining to Mr. Wood and Mr. Mulkey about Mr. Davenport's sexual harassment, his continuing to come into her work area and her continuing fear for her safety, Ms. Watson also complained on multiple occasions to Defendant's City Attorney about these same issues and about retaliation. Ms. Watson also complained to an outside investigator hired by Defendant as described below.

34.

An outside investigator investigated Ms. Watson's sexual harassment

allegations against Mr. Davenport and issued a report to the City Attorney and

Mayor of Defendant in or about September 2020 upholding Ms. Watson's

allegations of sexual harassment. In that report, the outside investigator *inter alia*

recounted her interviews with several witnesses, concluded that Ms. Watson's

sexual harassment allegations were credible, recounted that during the Covid

pandemic Ms. Watson was often alone in the building, recounted statements from

witnesses that Ms. Watson was "tore up", very upset, and fearful of continued

contact with Mr. Davenport to the point of wanting to be accompanied by someone

else whenever she might come into contact with him, and found the Defendant's

sexual harassment policy lacking.

35.

Ms. Watson repeatedly communicated her continuing fear of Mr. Davenport,

her desire that his sexual harassment of her stop, and that she be protected from

having to be anywhere near him.

36.

Following the June 2020 assault, battery and attempted rape, and despite

ineffective instruction not to do so, Mr. Davenport continued to come into

Plaintiff's work area, and on or about April 14, 2021, Mr. Davenport again,

12

without legitimate reason to be in Ms. Watson's work area, came into her work space and removed a physical barrier between him and her so that Mr. Davenport was inches from Plaintiff's body, causing her to have a panic attack that he was going to physically attack her again.

37.

After the April 2021 incident, another employee of Defendant came upon Ms. Watson, saw her extreme distress and panic, and went with Ms. Watson directly to the office of the City Attorney.  On information and belief, the other employee escorted Ms. Watson immediately to the City Attorney's office, not leaving her alone, because Ms. Watson was distraught and traumatized.

38.

The City Attorney told Ms. Watson and the other Warner Robins employee who had escorted Ms. Watson to that office, that Mr. Davenport had no legitimate reason to be in Ms. Watson's work area. The City Attorney told Ms. Watson she could go home.

39.

Shortly after the April 2021 incident with Mr. Davenport, Ms. Watson was diagnosed as a sexual assault victim, with Anxiety, Depression and PTSD, and was medically directed not to return to work at Defendant if Defendant could not guarantee that Mr. Davenport would stay away from her.

40.

Instead of taking steps to adequately ensure that Mr. Davenport would not further sexually harass Ms. Watson and that she would be safe physically working at Defendant and knowing that the prior alleged directions to Mr. Davenport were ineffective, Defendant kept Ms. Watson on a continuing unpaid leave, thereby constructively discharging her.

41.

Mr. Davenport sexually harassed *another* female employee of Defendant in October 2021, cornering her alone in a supply area filled with large equipment tires for Defendant's large equipment vehicles, and telling her that he would put her over a tire and have sex with her.

42.

Following that female employee's complaint about this incident, Mr. Davenport was allowed to resign.

43.

On April 13, 2022, Defendant reached out to Ms. Watson informing her that Mr. Davenport was no longer an employee of Defendant, mistakenly telling her that she had continued to be an employee of the City (since she in reality had been constructively discharged) and asking her if she wanted to come back to work since Mr. Davenport was no longer there.

44.

Economic Damages

As a result of the actions of the City of Warner Robins alleged here, Ms.

Watson has suffered injury in the form of monetary damages, including lost pay,

benefits, and medical expenses associated with psychological disorders and

treatment caused by Defendant's actions.

45.

Non-Economic Damages

As a result of Defendant's actions Ms. Watson has experienced and

continues to experience severe emotional distress, including but not limited to pain

and suffering, physical sickness, depression, anxiety, and PTSD and symptoms

associated with those diagnosed psychological conditions. Ms. Watson's

depression, anxiety and PTSD were diagnosed by her treating physician in the

immediate aftermath of the April 2021 incident in which Mr. Davenport, without

reason, permission or justification, was in Ms. Watson's work space and removed a

physical barrier between him and her so that he was within inches of her body. On

information and belief according to the witness who physically escorted Ms.

Watson to the City Attorney's office on that occasion Ms. Watson was distraught

and traumatized. On information and belief, other witnesses have described Ms.

Watson as upset, fearful and "tore up" as a result of Mr. Davenport's actions

towards her, which Defendant knew even before the April 2021 incident as a result of having received the September 2020 report of the outside investigator.

<u>FIRST CAUSE OF ACTION</u>
<u>SEXUAL HARASSMENT</u>
<u>(TITLE VII OF THE 1964 CIVIL RIGHTS ACT,</u>
<u>42 U.S.C.§2000e *et seq.*)</u>

46.

Ms. Watson realleges Paragraphs 1-45 with the same force and effect as if set forth fully herein.

47.

In particular, Ms. Watson realleges the allegations contained in regarding the (¶¶1-3) regarding the parties,  (¶4) regarding jurisdiction,  (¶5) regarding venue,  (¶6) regarding nature of the action, and  (¶7) regarding satisfaction of conditions precedent.

48.

In particular, Ms. Watson realleges (¶8) which sets forth that she is female and therefore in a protected class.

49.

Ms. Watson realleges the allegations contained in ¶¶8-43 establishing that she was subjected to ongoing sexual harassment by Mr. Davenport which was unwelcome.

50.

Ms. Watson realleges the allegations contained in ¶¶8-43 demonstrating that Mr. Davenport's harassment of her was based on her sex.

51.

Ms. Watson realleges the allegations contained in ¶¶8-43 demonstrating that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

52.

In particular, Ms. Watson realleges the allegations contained in ¶¶8-43 establishing that she held a subjective belief that she was being sexually harassed, as evidenced by the fact that she complained about Mr. Davenport's repeated and escalating sexual advances towards her, that he physically assaulted her, causing her to be fearful of being anywhere in his vicinity, and by the fact that she exhibited being distraught and traumatized when Mr. Davenport physically removed the barrier between her and him in April 2021 causing her to fear that he would once again physically assault her.

53.

Further, Ms. Watson realleges the allegations in ¶¶8-43 which demonstrate that she subjectively believed that Mr. Davenport's actions toward her were

sufficiently severe or pervasive to change her work environment. This is evidenced by the facts Ms. Watson was observed to be fearful, requiring someone else to be with her at the risk of her being anywhere near Mr. Davenport, her exhibition of great upset and fear following the June 2020 incident, and her exhibition of a state of distress and trauma following the April 2021 incident. In addition, in the immediate aftermath of the April 2021 incident, Ms. Watson's personal physician diagnosed her as a sexual assault victim, with depression, anxiety and PTSD, requiring her to be on leave instead of running the further risk of coming into contact with Mr. Davenport at work.

54.

In particular, Ms. Watson alleges that a reasonable woman in her position would objectively construe Mr. Davenport's actions as sufficiently severe or pervasive so as to change the work environment. Ms. Watson alleges that ¶34 describing the outside investigator's investigation and report to the Defendant upholding her allegations of sexual harassment further establishes the objective component that a reasonable woman in Ms. Watson's position would construe Mr. Davenport's comments and actions as sufficiently sever or pervasive so as to change the work environment so as to create a discriminatorily abusive working environment.

18

55.

Ms. Watson realleges ¶¶8-43 to demonstrate that she complained to

Defendant about Mr. Davenport's sexual harassment on repeated occasions, that

Defendant was concerned about the fact that Mr. Davenport was the son-in-law of

its Director of Human Resources, failed to take adequate remedial action to keep

Mr. Davenport away from Plaintiff, and to prevent further harassment of her by

him. Defendant's purported remedial action was insufficient to prevent the April

2021 incident involving Ms. Watson, and was also inadequate to prevent Mr.

Davenport from sexually harassing female employees of Defendant after Ms.

Watson's complaints. Defendant's response was to keep Ms. Watson on unpaid

leave instead of sufficiently dealing with Mr. Davenport. It was not until April

2022 that Defendant invited Ms. Watson to return to in person employment when

Mr. Davenport was no longer an employee of Defendant when he was allowed to

resign following yet another incident of sexual harassment with a different female

employee some six months after the April 2021 incident with Ms. Watson. Ms.

Watson further alleges that based on information that Mr. Davenport had prior

sexual harassment incidents at prior employers Defendant knew or should have

known that he would sexually harass women working for Defendant. In addition,

Mr. Davenport's sexual comments about women was open and well known. The

outside investigator found Defendant's sexual harassment policy lacking. All of the

above demonstrate that Defendant failed to take reasonable steps to prevent or remedy Mr. Davenport's sexual harassment of Ms. Watson, which is Defendant's burden to demonstrate, establishing a sufficient basis to hold Defendant liable for Mr. Davenport's sexual harassment.

56.

Ms. Watson realleges ¶¶44 and 45 demonstrating that she has suffered economic and non-economic damages arising out of the sexual harassment to which she was subjected.

<u>SECOND CAUSE OF ACTION</u>
<u>RETALIATION</u>
<u>(TITLE VII OF THE 1964 CIVIL RIGHTS ACT,</u>
<u>42 U.S.C.§2000e <i>et seq.</i>)</u>

57.

Ms. Watson realleges ¶¶ 1-45 with the same force and effect as if set forth fully herein.

58.

Ms. Watson realleges the allegations contained in regarding the (¶¶1-3) regarding the parties,  (¶4) regarding jurisdiction,  (¶5) regarding venue, (¶6) regarding nature of the action, and  (¶7) regarding satisfaction of conditions precedent.

59.

Ms. Watson realleges the allegations contained in ¶¶24, 29, 33, and 34 demonstrating that she complained to numerous superiors at Defendant including Mr. Wood, Mr. Mulkey, the City Attorney, and the outside investigator brought in by Defendant to investigate Ms. Watson's sexual harassment allegations, which the outside investigator upheld. These numerous complaints establish protected activity.

60.

Ms. Watson realleges the allegations generally in ¶¶ 1-45, and inter alia more specifically in ¶¶23, 33-36, 39, and 52-54 demonstrating that Ms. Watson's protected activity was based on her subjectively honest as well as an objectively reasonable belief that she was being sexually harassed.

61.

Ms. Watson realleges ¶¶25, 28, 30, and 31 which set forth facts that after she complained, Ms. Watson was reminded that that she was on probation, that employees were instructed to increase scrutiny of her, that her computer was tampered with, that she was prevented from filing a police report regarding the June 2020 incident, or from obtaining a judicial restraining order to keep Mr. Davenport away from her, and ultimately that she was kept on an unpaid leave as adverse actions to which Ms. Watson was subjected following her several

complaints. Ms. Watson realleges that there was concern about Mr. Davenport being the son-in-law of Defendant's HR Director, and that it was easier to deter Ms. Watson from working for Defendant and to in fact keep her on leave than to deal with Mr. Davenport. Plaintiff alleges that each of the aforesaid adverse employment actions might well dissuade a reasonable employee from making a similar charge of sexual harassment.

62.

Defendant's actions in reminding Plaintiff that she was on probation, asking other employees to specially scrutinize Plaintiff, tampering with her computer, preventing her from filing a police report, preventing her from getting a judicial restraining order, and keeping her on unpaid leave were because of Ms. Watson's complaints about Mr. Davenport's sexual harassment.

63.

Ms. Watson realleges ¶¶44 and 45 demonstrating that she has suffered economic and non-economic damages arising out of the retaliation to which she was subjected.

## THIRD CAUSE OF ACTION
## RETALIATORY HARASSMENT
## (TITLE VII OF THE 1964 CIVIL RIGHTS ACT,
## 42 U.S.C.§2000e *et seq.*)

64.

Ms. Watson realleges ¶¶ 1-45 with the same force and effect as if set forth fully herein.

65.

Ms. Watson realleges the allegations contained in regarding the (¶¶1-3) regarding the parties,  (¶4) regarding jurisdiction,  (¶5) regarding venue, (¶6) regarding nature of the action, and  (¶7) regarding satisfaction of conditions precedent.

66.

Ms. Watson realleges the allegations contained in ¶¶24, 29, 33, and 34 demonstrating that she complained to numerous superiors at Defendant including Mr. Wood, Mr. Mulkey, the City Attorney, and the outside investigator brought in by Defendant to investigate Ms. Watson's sexual harassment allegations, which the outside investigator upheld. These numerous complaints establish protected activity.

67.

Ms. Watson realleges the allegations generally in ¶¶ 1-45, and *inter alia* more specifically in ¶¶23, 33-36, 39, and 52-54 demonstrating that Ms. Watson's

protected activity was based on her subjectively honest as well as an objectively

reasonable belief that she was being sexually harassed.

68.

Ms. Watson realleges ¶¶25, 28, 30, and 31 which set forth facts that after she

complained, Ms. Watson was reminded that that she was on probation, that

employees were instructed to increase scrutiny of her, that her computer was

tampered with, that she was prevented from filing a police report regarding the

June 2020 incident, or from obtaining a judicial restraining order to keep Mr.

Davenport away from her, and ultimately that she was kept on an unpaid leave as

adverse actions to which Ms. Watson was subjected following her several

complaints. Ms. Watson realleges that there was concern about Mr. Davenport

being the son-in-law of Defendant's HR Director, and that it was easier to deter

Ms. Watson from working for Defendant and to in fact keep her on leave than to

deal with Mr. Davenport. Plaintiff alleges that cumulatively these aforesaid

adverse employment actions might well dissuade a reasonable employee from

making a similar charge of sexual harassment creating a retaliatory hostile

environment.

69.

Defendant's actions in reminding Plaintiff that she was on probation, asking

other employees to specially scrutinize Plaintiff, tampering with her computer,

24

preventing her from filing a police report, preventing her from getting a judicial restraining order, and keeping her on unpaid leave were because of Ms. Watson's complaints about Mr. Davenport's sexual harassment.

### 70.

Ms. Watson realleges ¶¶44 and 45 demonstrating that she has suffered economic and non-economic damages arising out of the retaliatory hostile environment to which she was subjected.

### FOURTH CAUSE OF ACTION
### CONSTRUCTIVE DISCHARGE
### (TITLE VII OF THE 1964 CIVIL RIGHTS ACT,
### 42 U.S.C.§2000e *et seq.*)

### 71.

Ms. Watson realleges ¶¶ 1-45 with the same force and effect as if set forth fully herein.

### 72.

Ms. Watson realleges the allegations contained in regarding the (¶¶1-3) regarding the parties,  (¶4) regarding jurisdiction,  (¶5) regarding venue, (¶6) regarding nature of the action, and  (¶7) regarding satisfaction of conditions precedent.

### 73.

Ms. Watson realleges the allegations contained in ¶¶24, 29, 33, and 34 demonstrating that she complained to numerous superiors at Defendant including

Mr. Wood, Mr. Mulkey, the City Attorney, and the outside investigator brought in by Defendant to investigate Ms. Watson's sexual harassment allegations, which the outside investigator upheld. These numerous complaints establish protected activity.

74.

Ms. Watson realleges the allegations generally in ¶¶ 1-45, and *inter alia* more specifically in ¶¶31-40 demonstrating that Defendant was unable or unwilling to take sufficient steps to keep Mr. Davenport away from the Plaintiff, and that after he sexually assaulted her in June 2020, and despite ostensible direction not to be near Ms. Watson, Mr. Davenport continued to harass her, culminating in the April 2021 incident in which he physically removed a barrier between him and her so that they were inches apart. On this occasion, Ms. Watson was distraught and traumatized, shortly thereafter diagnosed as being a sexual assault victim, having depression, anxiety, and PTSD, and medically directed not to return to Defendant's employment unless Defendant could protect her from Mr. Davenport. Having already prevented Ms. Watson from filing a police report and from obtaining a judicial restraining order against Mr. Davenport, Defendant further took inadequate steps to prevent Mr. Davenport from coming near Ms. Watson. As Mr. Wood acknowledged, apparently Mr. Davenport did not want to follow directions, and the City Attorney confirmed that Mr. Davenport had no

26

legitimate reason to be near Ms. Watson with respect to the April 2021 incident. Based on the foregoing Defendant kept Ms. Watson on unpaid leave instead of taking the requisite steps to keep her safe, so that a reasonable person in Ms. Watson's position would feel unable to work safely in Defendant's environment, under the continuing threat of Mr. Davenport assaulting her again. These facts support a constructive discharge which is underscored by Defendant's own April 13, 2022 letter inviting Ms. Watson back because Mr. Davenport was no longer there.

75.

Ms. Watson realleges ¶¶44 and 45 demonstrating that she has suffered economic and non-economic damages arising out of her constructive discharge.

WHEREFORE, Plaintiff seeks the following relief:

1.   Compensatory make-whole relief for Plaintiff's economic damages, including but not limited to full back pay and benefits of employment; and reimbursement of all medical expenses attendant to the medical diagnosis and treatment for the emotional conditions of which Ms. Watson was diagnosed resulting from Defendant's actions;

2.   Damages for mental anguish;

3.   Attorneys' fees, expert witness fees, costs and disbursements of this action;

4. Appropriate declaratory and injunctive relief;

5. Front pay in lieu of reinstatement;

6.  Interest from April 14, 2021 until judgment is entered and post-judgment interest as may be proper;

7.  Such other and further relief as this Court deems appropriate; and

8. Plaintiff demands TRIAL BY JURY.

This 23rd day of May 2022.

Respectfully submitted,
/Robert N. Marx
Robert N. Marx
 Georgia Bar Number 475280
Jean Simonoff Marx
Georgia Bar No. 465276
Marx & Marx, L.L.C.
Attorneys for Plaintiff
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338
Telephone:  (404) 261-9559
E-mail:  lawyers@marxlawgroup.com